# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AARON D. STALLINGS,

        Plaintiff,

vs.                                                             No. CIV 15-1014 JB/WPL

BURLINGTON NORTHERN SANTA FE
RAILWAY,

        Defendant.

### <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Defendant BNSF Railway Company's Fed.

R. Civ. P. 12(B)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Memorandum

Brief in Support Thereof, filed January 7, 2016 (Doc. 13)("Motion to Dismiss").  The Court held

a hearing on April 12, 2016.  The primary issue -- with respect to a decision by a Public Law

Board ("PL Board") affirming the termination of Plaintiff Aaron Stallings' employment with

Defendant Burlington Northern Santa Fe Railway[2] -- is whether Stallings has alleged: (i) the PL

Board's failure to comply with the requirements of the Railway Labor Act, 45 U.S.C. §§ 151-65;

(ii) the PL Board's failure to conform or confine itself to matters within the scope of its

jurisdiction; or (iii) a PL Board member's fraud or corruption.  Those three scenarios are the only

---

[1]On September 16, 2016, the Court issued an Order, filed September 16, 2016 (Doc. 32)("Order") in which it granted Defendant BNSF Railway Company's Fed. R. Civ. P. 12(B)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Memorandum Brief in Support Thereof, filed January 7, 2016 (Doc. 13), stating: "The Court will, however, at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

[2]The Motion to Dismiss provides that the correct name for the Defendant is "BNSF Railway Company."  Motion to Dismiss at 1 n.1.  The Court will hereinafter refer to the Defendant as "BNSF Railway."

scenarios for which the Railway Labor Act confers jurisdiction on federal courts to review and reverse PL Board decisions. See 45 U.S.C. § 153(q). Here, Stallings' allegations do not meet that narrow grant of jurisdiction, because he is arguing that the PL Board improperly weighed the evidence in his case by virtue of its supposed reliance on excluded evidence. See Stallings' Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Consolidated Memorandum at 2, filed February 19, 2016 (Doc. 20)("Response"). That argument does not sound in one of the three scenarios under which a federal court may review a PL Board's order, leaving the Court without jurisdiction. See Kinross v. Utah Ry. Co., 362 F. 3d 658, 661-63 (10th Cir. 2004). Accordingly, the Court grants Defendant BNSF Railway's Motion to Dismiss.

## FACTUAL BACKGROUND

Stallings, a former BNSF Railway worker and employee, seeks to vacate a PL Board order upholding his March 18, 2013, dismissal from the company following his alleged involvement in a kickback scheme. See Petition to Vacate the Order of Public Law Board No. 7590, Case No. 27, filed November 6, 2015 (Doc. 1)("Complaint"). The Court draws the facts from Stallings' Complaint.

BNSF Railway employed Stallings for eight years as a trackman, truck driver, and machine operator throughout New Mexico and Texas. See Complaint ¶ 6, at 2. He then spent his last ten years of employment with BNSF Railway as a flange lubricator and maintainer. See Complaint ¶ 6, at 2. In that capacity, Stallings would maintain and service his company vehicle at Jaramillo Fleet Services in Belen, New Mexico. See Complaint ¶ 7, at 2. Beginning in 2012, a person called Joshua Garcia worked as the front desk clerk for Jaramillo Fleet Services. See Complaint ¶ 7, at 2. Garcia handled Jaramillo Fleet Services' invoices and company records. See Complaint ¶ 8, at 2.

Stallings spoke with the appropriate persons at BNSF Railway so that Garcia's "mobile vehicle washing service," "Americlean," could become an approved BNSF Railway services vendor.  Complaint ¶ 9, at 3.  "Americlean" became an approved services vendor to the contractor that BNSF Railway uses to manage its fleet of vehicles.  See Complaint ¶ 9, at 3.  In February of 2013, Stallings was informed that he was under investigation as a co-conspirator in a kickback scheme to defraud BNSF Railway -- a scheme that Garcia had already admitted to undertaking.  See Complaint ¶¶ 11-12, at 3.  A February 13, 2013, notice of investigation charged:

> Alleged misconduct involving the misuse of a BNSF credit account by providing BNSF vehicle IDs to American Clean, who in turn charged [BNSF's contractor] for work performed, after payment was received by American Clean, you allegedly received a portion of the reimbursement to American Clean in the amount of approximately $9,350.00 . . . for approximately the past four (4) months.  BNSF['s] first knowledge was Wednesday, February 13, 2013.

Complaint ¶ 18, at 4.  The eventual March 18, 2013, notice of Stallings' dismissal reiterated that same charge.  See Complaint ¶ 18, at 4.

BNSF Railway held a formal hearing on February 21, 2013, "for the purpose of ascertaining the facts and determining [Stallings] responsibility, if any, in connection with Garcia's scheme to defraud . . . BNSF via its contractor. . . ."  Complaint ¶ 17, at 4 (alterations in original)(internal quotation marks omitted).  A BNSF Railway investigator presented an expansive case against Stallings, detailing numerous allegations of both his involvement with "Americlean" and its fraud upon BNSF Railway.  Complaint ¶¶ 20, 25, at 5, 6.  "The balance of evidence presented against Stallings consisted of documents purporting to detail [a] several month investigation, . . . [a] videotaped interview with Stallings," and a videotaped interview with Garcia.  Complaint ¶¶ 19, 20, at 4, 5.  Stallings contends that some of the evidence presented against him implicated unnoticed charges.  See Complaint ¶ 25, at 6.  The Complaint

memorializes that Stallings also took issue with his inability to (i) review the evidence against him before his hearing, or (ii) cross examine Garcia at the hearing.  See Complaint ¶¶ 19, 21, at 4, 5.  On the evidence presented at the hearing, BNSF Railway dismissed Stallings.  See Complaint ¶ 2, at 1.

In accordance with the Railway Labor Act, and the relevant collective bargaining agreement, the PL Board reviewed BNSF Railway's decision to dismiss Stallings.  See Complaint ¶ 34, at 9.  The PL Board, one of many national boards that exist to "ensure substantial evidence exists to sustain" findings against railroad employees, affirmed Stallings' dismissal.  Complaint ¶ 6, at 2.  It did so despite choosing to exclude from its consideration Garcia's taped testimony that was played at the hearing, and which implicated Stallings.  See Complaint ¶ 6, at 2.

## PROCEDURAL BACKGROUND

Following the PL Board's affirmance, Stallings filed his Complaint alleging that the Court must vacate the PL Board's decision, arguing that, in the absence of Garcia's excluded testimony, there was insufficient evidence to support BNSF Railway's termination of his employment.  See Complaint ¶ 57, at 15.  Essentially, then, given the allegedly minimal process afforded to him at the hearing -- and the subsequent choice of the Board to exclude Garcia's testimony -- Stallings claims that the Board's decision "lacked a foundation in reason or fact." Response at 1, 2.  That, Stallings contends, is grounds for reversal and remand because such a decision violates the Railway Labor Act and because Stallings was "denied the right to be heard in a meaningful manner [as is] guaranteed by the Constitution."  Response at 1, 2.  Stallings thus requests that this Court review the PL Board's order for both a statutory violation of the Railway Labor Act and the lack of due process afforded to him by the PL Board's review of his case. See

Response at 1, 2.

   1.   **The Motion to Dismiss**.

   In response to Stallings' Complaint, BNSF Railway filed its Motion to Dismiss.  See
Motion to Dismiss at 1.  In the Motion to Dismiss, BNSF Railway argues that the Court lacks
subject-matter jurisdiction to hear this dispute where Stallings is alleging that he did not receive
a fair formal investigation hearing, which in turn led to the PL Board making a decision lacking a
foundation in reason or fact.  See Motion to Dismiss at 2-4, 7.  This is because the Railway
Labor Act has narrowly confined federal court jurisdiction to three scenarios, and none
contemplate Stallings' allegations.  See Motion to Dismiss at 2-4, 7.  The Motion to Dismiss
begins by providing the relevant standard of review for 12(b)(1) motions and then turns to an
explanation of the Railway Labor Act's narrow grant of federal court jurisdiction.  See Motion to
Dismiss at 5-10.

   The Motion to Dismiss argues that the Railway Labor Act permits only three narrow
grounds for judicial review under 45 U.S.C. § 153(q) -- (i) the PL Board's failure to comply with
the Railway Labor Act's requirements; (ii) the PL Board's failure to conform or confine itself to
matters within the scope of its jurisdiction; or (iii) the PL Board members' fraud or corruption.
See Motion to Dismiss at 2.  Consequently, the Motion to Dismiss distills the Complaint's
allegations and argues that they do not fit within the narrow confines of the Railway Labor Act's
jurisdictional authorization.  See Motion to Dismiss at 4-5, 13-19 (relying on Kinross v. Utah Ry.
Co., 362 F. 3d 658).  According to the Motion to Dismiss, the Complaint alleges that, because of
the procedural irregularities during Stallings' formal investigation hearing -- those irregularities
being the implication of unnoticed charges, the inability to view the evidence against him before
the hearing, and the inability to cross examine Garcia -- there is a lack of sufficient evidence to

support the PL Board's decision, and thus the Court must vacate the PL Board's order.  See Motion to Dismiss at 4-5, 13-19.  BNSF Railway maintains that these claims plainly do not fall within one of the three scenarios for which judicial review may be had in federal court.  See Motion to Dismiss at 13-19.

After initially making short shrift of Stallings' inability to confine his allegations to a reviewable scenario under the Railway Labor Act, the Motion to Dismiss also generally argues against the judicial review of the due process afforded to Stallings.  See Motion to Dismiss at 19-22.  BNSF Railway argues that this "minor dispute," and its appurtenant statutory resolution process, is a dispute that Congress sought to remove from the federal courts by its narrowly tailored grant of jurisdiction in 45 U.S.C. § 151(q).  See Motion to Dismiss at 19-22.  That is, BNSF Railway contends that there are policy reasons against -- and not for -- relaxing the relevant jurisdictional restraints of the Railway Labor Act.  See Motion to Dismiss at 19-22.  BNSF Railway argues that the United States Court of Appeals for the Tenth Circuit has already specifically limited judicial review over railway claims alleging insufficient process.  See Motion to Dismiss at 8, 19-22.  Accordingly, BNSF Railway argues that the Court must dismiss the Complaint for lack of subject-matter jurisdiction in the Court.  See Motion to Dismiss at 22.

2.  **The Response to the Motion to Dismiss**.

In response to the Motion to Dismiss, Stallings clarifies his Complaint's arguments.  See Response at 1.  Stallings concedes that he is making one substantive argument: "[T]he PLB's decision to uphold his dismissal violated the Railway Labor Act . . . because it lacked a foundation in reason or fact."  Response at 1.  He argues this conduct fits within the "admittedly narrow scope of review," because the argument is that "the PLB violates the Act where it relies on evidence that it has excluded, resulting in a lack of substantial evidence for a ruling that

effectively denies the right to be heard in a meaningful manner guaranteed by the Constitution." Response at 2.

The Response then revisits the relevant factual background and argues that "there was not one scintilla of evidence in the record before the PLB to indicate that Stallings knew about, much less was involved in Garcia's scheme." Response at 7. Accordingly, the Response concludes that "resolving whether the PLB violates the Act where it relies on evidence it had excluded obviously implicates the question of whether the PLB's decision was supported by 'truly substantial' evidence, and as a result, this appeal lies within the scope of permissible review under the Act." Response at 12. The Response thereafter requests that, should the Court disagree with Stallings that there is jurisdiction, the Court nonetheless review this matter to make a new rule of law finding that on these facts there was a violation of Stallings' due process. See Response at 12.

### 3. **The Reply**.

Defendant BNSF Railway's Reply in Support of its Motion to Dismiss for Lack of Subject-Matter Jurisdiction [Doc. No. 13], filed March 7, 2016 (Doc. 23)("Reply"), again relies on Tenth Circuit law foreclosing jurisdiction under the Railway Labor Act where the substantive claim is merely a request for a reevaluation of the scope of the evidence supporting the PL Board's decision. See Reply at 4. After arguing that Congress foreclosed federal courts from entertaining this factual-sufficiency claim, the Reply turns to Stallings' request that the Court undergo a review of the due process that the PL Board afforded to Stallings during the decision to affirm his dismissal. See Reply at 6. According to the Reply, Stallings' argument is flawed, because the Tenth Circuit restricts jurisdiction over these matters to only those that the Railway Labor Act authorizes, due process was afforded, and the evidence amassed at the hearing was

substantial.[3]  Accordingly, the Reply reiterates BNSF Railway's argument that the Court lacks subject-matter jurisdiction.

**4.  The Hearing**.

The Court held a hearing on April 12, 2016.  See Transcript of Hearing (taken April 12, 2016)("Tr.").[4]  At the hearing, BNSF Railway reiterated the arguments that it made in the Motion to Dismiss.  See Tr. at 3:17-18 (Hyatt).  BNSF Railway began by arguing that "the scope of judicial review of Public Law Board decisions is among the narrowest known to law" and that thus the narrow issue in this case is "whether Stallings' objections to the Public Law Board's decision fall within any of the three limited categories of review provided for by the Railway Labor Act."  Tr. at 3:17-18; 4:8-12 (Hyatt).  As expected, BNSF Railway next argued that Stallings' claims do not fall within any of the three bases for review under the Railway Labor Act, because, at its core, the claim is seeking sufficiency of the evidence review of the Board's decision.  See Tr. at 4:1-9 (Hyatt).  BNSF Railway relied on Kinross v. Utah Railyard Co., which it argued forecloses judicial review of the sufficiency of the evidence as well as, in this context, review of due process.  See Tr. at 5:10-17 (Hyatt).

In response, Stallings attempted to make clear what his arguments and claims were.  See Tr. 8:8-25 (Young).  To clear up any confusion, Stallings explained that he was attempting to

---

[3]As evidence that Stallings was complicit, BNSF Railway points to testimony by the BNSF Railway investigator who investigated the kickback scheme that implicates Stallings, Stallings' testimony that he solicited business for Garcia and sent him photographs of the vehicle, Stallings' approval of a bill for the cleaning of a vehicle that was not cleaned, and Stallings' conflicting testimony regarding how he would approve third-party cleaning services. See Reply at 10.

[4]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

gain jurisdiction through the first ground for jurisdiction -- the PL Board's failure to comply with the Railway Labor Act's requirements -- and that the PL Board's failure to comply occurred when it excluded evidence which was amassed at Stallings' hearing, but then still affirmed Stallings' dismissal.  See Tr. 8:8-25 (Young).  The Court, in considering Stallings' argument, suggested that this contention sounds very much like "sufficiency of the evidence review."  Tr. 11:23-24 (Court).  Stallings responded that he was not making that argument, because the United States Court of Appeals for the Seventh Circuit has held that "if a board's decision is without foundation in reason or in fact the board is acting beyond the scope" of the Railway labor Act. Tr. at 12:20-22 (Young).  Stallings further clarified that his argument, in essence, is that because, in his reading of the record, there lacks any evidence implicating his client beyond Garcia's testimony -- which the PL Board chose to exclude[5] -- there is thereby insufficient evidence to support the decision.  See Tr. 18:3-25; 19:1-10 (Young).  That exclusion means, he explained, that "[there was not] any evidence" at all.  Tr. 19:24-25 (Young).  The Court, again, indicated that this chain of reasoning requires its review of the evidence, which the Tenth Circuit forecloses.  See Tr. 19:21-23 (Court).

BNSF Railway, in rebuttal, then discussed with the Court the extent to which the Court should parse the evidence that was before the PL Board in its consideration of Stallings' Complaint.  See Tr. at 24:24-25; 25:1-6 (Hyatt).  BNSF Railway provided that the Tenth Circuit

---

[5]The PL Board chose to exclude Garcia's testimony, because it was "damning evidence" that "should not have been admitted" given that "the Claimant was deprived of an opportunity to cross examine" Garcia.  Public Law Board No. 7590, Case No. 27 Order at 3, filed November 6, 2015 (Doc. 1-1)("PL Board Order").  Still, according to the PL Board Order, "even with the videotape excluded, there is substantial evidence in the record" of Stallings' involvement in the kickback scheme. PL Board Order at 3 (citing the photographs that Stallings sent to Garcia and Stallings' conflicting accounts about how he approved a third-party vendor cleaning service for a truck that was at a dealership being serviced during the relevant timeframe).

squarely forecloses "sufficiency of the evidence" review, meaning that the Court need not make any evidentiary review whatsoever.  Tr. at 24:24-25; 25:1-6 (Hyatt).  In the Seventh Circuit, in contrast, there is an avenue for persons disappointed with PL Board decisions to seek a due process review in the federal courts.  See Tr. at 28:1-18 (Hyatt).  That due process review, BNSF Railway argued, is what the Seventh Circuit was exercising when it provided that "if a board's decision is without foundation in reason or in fact the board is acting beyond the scope" of the Railway Labor Act.  Tr. at 28:1-18 (Hyatt).  Regardless of the Circuit split, BNSF Railway reiterated that such logic does not hold in the Tenth Circuit and, thus, that the Court should grant BNSF's Motion to Dismiss.  See Tr. at 30:12-25 (Hyatt).

The Court then gave Stallings an opportunity to respond.  See Tr. at 31:3-5 (Young).  He maintained that he was not arguing that there was insufficient evidence and instead was arguing that there was no evidence at all.  See Tr. at 31:6-19 (Young).  The Court then noted that "there [are] two kinds of insufficient [evidence review,] one is when it's zero and the other is when it's one that may not be enough but they're both considered insufficiency of the evidence review."  Tr. at 33:4-8 (Court).  The Court indicated that it appeared as though Stallings was asking the Court to review the PL Board's decision in a way that the Tenth Circuit had foreclosed, and then ended the hearing.  See Tr. at 37:5-17 (Court).

## LAW REGARDING RULE 12(B)(1) MOTIONS TO DISMISS.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence.").   "[Because] federal courts are courts of limited jurisdiction, we presume no

jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction."

United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir.

1999).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense

of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).

The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction

"generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's

allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which

subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in
> opposing a rule 12(b)(6) motion: the court must consider the complaint's
> allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v.
> Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the
> jurisdictional facts themselves, a district court may not presume the truthfulness
> of those allegations.  A court has wide discretion to allow affidavits, other
> documents, and a limited evidentiary hearing to resolve disputed jurisdictional
> facts under Rule 12(b)(1).  In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56 [summary-
> judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-

9 (D.N.M., March 11, 2009)(Browning, J.)(citations omitted), aff'd on other grounds by 634

F.3d 1170 (10th Cir. 2011).  The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P.
> 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction --
> its very power to hear the case -- there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to the existence of its power to hear
> the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING THE COURT'S JURISDICTION UNDER THE RAILWAY LABOR ACT.

The source for grievance arbitration in the railroad and airline industries is statutory.  See 45 U.S.C. §§ 151-65.  "The Railway Labor Act was passed in 1926 to encourage collective bargaining by railroads and their employees in order to prevent . . . wasteful strikes and interruptions of interstate commerce."  Detroit & T.S.L.R. Co. v. United Transp. Union, 396 U.S. 142, 148 (1969).

The purposes of the chapter are: (1) To avoid any interruption to commerce or to

the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a.  The Railway Labor Act created local boards of adjustment to settle grievances that arise in the ordinary course of carrying out major agreements, as well as those minor grievances that occur incidentally in the course of a worker's employment.  See Ollman v. Special Bd. Of Adjustment No. 1063, 527 F.3d 239, 245 (2d Cir. 2008).  The local boards soon became inefficient, causing the number of unadjusted disputes to grow.  See Ollman v. Special Bd. Of Adjustment No. 1063, 527 F.3d at 245.  Congress thus amended the Railway Labor Act in 1934 to reinvent the grievance and adjustment procedures relating to minor disputes among employees, unions, and carriers.  See Elgin, Joliet & Eastern Ry. v. Burley, 325 U.S. 711, 725 (1945).  Disputes involving the interpretation or application of existing collective bargaining agreements are classified as "minor disputes," whereas disputes concerning the making of those collective bargaining agreements are classified as "major disputes."  Elgin, Joliet & Eastern Ry. v. Burley, 325 U.S. at 723-24.  By the amendment, then, Congress considered it essential to keep "minor" disputes within the boards of adjustment and out of the courts.  Trainmen v. Chicago, R. & I. R. Co., 353 U.S. 30, 40 (1957).

    To further those goals, the amended Railway Labor Act creates the National Railroad Adjustment Board, "which consists of seventeen members selected by the carriers and seventeen by the employee representatives."  Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 245.  "[D]isputes may be referred by petition of the parties or by either party to the appropriate

- 13 -

division of the National Railroad Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 245 (internal quotation marks and citation omitted).  Despite these procedures, inefficiency still plagued the system, causing Congress to once again amend the Railway Labor Act in 1966.  See Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 245-46.

Now, a carrier and a representative of the employees of that carrier may agree to the formation of a "special adjustment board," which may resolve all disputes otherwise referable to the National Railroad Adjustment Board. Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 246.  Such "special adjustment boards," or PL Boards, sit in panels consisting of one person designated by the carrier, one by the employees' representative, and a neutral panelist. See Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 246.  See also Brotherhood of Maintenance of Way Employees Division/IBT v. Norfolk S. Ry. Co., 2012 WL 4461690, at *8 n.12 (N.D. Ill., Sept. 25, 2012)(Kendall, J.)("[Railway Labor Act] arbitration Boards are sometimes referred to as 'Public Law Boards.'  Public Law Boards are equivalent in all respects to the [National Railroad Arbitration Board] and the term is interchangeable with Special Boards of Adjustment.").  "[P]arties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the [] divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them." Ollman v. Special Board of Adjustment No. 1063, 527 F.3d at 246 (internal quotation marks and citation omitted).  A National Board of Mediation may fund the process and help designate persons to sit on the boards. See 45 U.S.C. § 143, Second.

The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations.  Normally finality will work to the benefit of the worker: He will receive a final administrative answer to his dispute; and if he wins, he will be spared the expense and effort of time-consuming appeals which

he may be less able to bear than the railroad.

Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 94 (1978).  Congress thus limited judicial review of Adjustment Board orders to three specific grounds: (i) the Adjustment Board's failure to comply with the Railway Labor Act's requirements; (ii) the Adjustment Board's failure to conform, or confine, itself to matters within the scope of its jurisdiction; and (iii) fraud or corruption.  See 45 U.S.C. § 153(q).  "Only upon one or more of these bases may a court set aside an order of the Adjustment Board."  Union Pacific R. Co. v. Sheehan, 439 U.S. at 94.

Although the Supreme Court of the United States has described the judicial review under the Railway Labor Act as "among the narrowest known to the law," Union Pacific R. Co. v. Sheehan, 439 U.S. at 91; Diamond v. Terminal Ry. Alabama State Docks, 421 F.2d 228, 233 (5th Cir. 1970), some Courts of Appeals have made exceptions for public policy reasons, see Union Pacific R.R. v. United Transp. Union (Madison), 3 F.3d 255, 261-65 (8th Cir. 1993)(holding specifically that precedent concerning public policy review under the National Labor Relations Act applies as well to the Railway Labor Act), cert. denied, 510 U.S. 1072 (1994); Union Pacific R.R. v. United Transp. Union (Gray), 23 F.3d 1397, 1399-1400 (8th Cir. 1994)(same); Delta Air Lines v. Air Line Pilots Assn., 861 F.2d 665, 669-71 (11th Cir. 1988)(assuming, without discussion, that public policy review is available under the Railway Labor Act as well as under the National Labor Relations Act).  Other Courts of Appeals have generally avoided public policy as grounds for review.  See Lyons v. Norfolk & Western Ry., 163 F.3d 466, 469-70 (7th Cir. 1999)(regarding a PL Board's interpretation of a contract in a manner that allegedly offended public policy, and holding that "[a]s we have said too many times to want to repeat again, the question for a federal court asked to set aside an arbitration award . . . is not whether the arbitrator erred in interpreting the contract; it is not whether they clearly erred

in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.  If they did, their interpretation is conclusive."); Atchison, Topeka & Santa Fe Ry. v. United Transp. Union, 175 F.3d 355, 358 (5th Cir. 1999)("Even if Santa Fe is correct that there is a well-defined public policy against reinstating a drug user to a safety-sensitive position in the railroad industry, the PLB's decision in this case would not violate that policy."); BMWE v. Denver & Rio Grande Western Ry., 963 F. Supp. 946, 948 (D. Col. 1997)(Babcock, J.)(considering a collective bargaining contract that may offend public policy, and holding that "I must adhere to the limited scope of review delineated by Congress in § 153(p), (q) and reiterated by the Court in Sheehan.  Defendant does not challenge the Board order under any of the three prongs set forth in the statute."); United Transp. Union v. Union Pacific RR., 116 F.3d 430, 433-35 (9th Cir. 1997)("We need not decide the issue here, however, because we conclude below that even if public policy provides a proper basis for setting aside a Board arbitration award, in light of the Board's failure to determine whether [employee] had in fact used drugs, the district court erred in concluding that the award reinstating [employee] would violate a public policy against drug use in the railroad industry.").

There is a greater split among the Courts of Appeals concerning whether courts may review Adjustment Board decisions on due-process grounds, in addition to the three grounds that the Railway Labor Act expressly permits.  Some Courts of Appeals have reviewed decisions where a due-process violation was alleged.  See Goff v. Dakota, Minnesota & Eastern R.R., 276 F.3d 992, 997 (8th Cir. 2002)(exercising jurisdiction and undergoing a due-process review of a PL Board order by holding that "in addition to the statutorily created parameters of review, courts have recognized that railroad arbitration decisions are reviewable for possible due process violations"); Atchison, Topeka and Santa Fe Ry. v. United Transp. Union, 175 F.3d at 357

(same); Pokuta v. Trans World Airlines, 191 F.3d 834, 840 (7th Cir. 1999)(same); Shafii v. PLC British Airways, 22 F.3d 59, 64 (2d Cir. 1994)(same); English v. Burlington Northern R.R., 18 F.3d 741, 744 (9th Cir. 1994)(same).  Others, including the Tenth Circuit, have held otherwise, foreclosing the review of due-process claims brought pursuant to the Railway Labor Act.  See United Steelworkers of Am. Local 1913 v. Union Pacific R.R., 648 F.2d 905, 910-11 (3d Cir. 1981)(rejecting a due-process claim because "[e]ven though circumstances may seem compelling in an individual case, we are convinced that we must adhere strictly to the statutory command that Board findings be set aside in only three narrow sets of circumstances"; Jones v. Seaboard System R.R., 783 F.2d 639, 642-44 (6th Cir. 1986)(same); Kinross v. Utah Ry. Co., 362 F.3d at 662 n.3 (same); Henry v. Delta Air Lines, 759 F.2d 870, 873 (11th Cir. 1985)(same).

The Tenth Circuit, in particular, held that "Sheehan preclude[s] judicial review of due process claims beyond those specifically articulated in the Railway Labor Act.  The Sheehan Court repeatedly stated the three grounds set out in the statute are the *only* grounds for judicial review."  Kinross v. Utah Ry., Co., 362 F.3d at 662 (emphasis in original).  "Congress specifically limited due process review of Adjustment Board proceedings to the three specific claims articulated in the statute."  Kinross v. Utah Ry., Co., 362 F.3d at 662.  "[T]he Railway Labor Act itself provides for process sufficient to meet constitutional requirements."  Kinross v. Utah Ry., Co., 362 F.3d at 662 n.3.

With respect to those three grounds, they are plainly and narrowly applied.  See Union Pacific R. Co. v. Sheehan, 439 U.S. at 93.  A district court "improperly operate[s] outside the bounds of these three grounds for judicial review by evaluating the scope of the evidence presented, and thus exceed[s] its subject matter jurisdiction."  Kinross v. Utah Ry., Co., 362 F.3d at 662 n.3.  See Pokuta v. Trans World Airlines, 191 F.3d at 840-41 (classifying an employee's

claim that the arbitral board gave "undue emphasis" to hearsay testimony as "more of an argument that the Board weighed the evidence improperly, an argument that exceeds the narrow scope of our review").

> Congress allowed for review of the Board's failure to comply with the requirements of the Railway Labor Act, including procedural requirements ensuring claimants an opportunity to present evidence and argue their case. Second, it allowed for review of the Board's failure to confine itself to matters within its jurisdiction.  Finally, it allowed for review for fraud or corruption on the part of the Board, which ensures an impartial tribunal.

Kinross v. Utah Ry., Co., 362 F.3d at 662 n.3.

## ANALYSIS

Stallings' Complaint provides that there is "no evidence in the record" to support the PL Board's decision to deny his claim to return to work with BNSF Railway, which he asserts resulted in a decision the evidence does not support, and which denied him the right to be heard in a meaningful manner.  Complaint ¶ 61, at 15.  See Response at 12-13.

> The Railway Labor Act sets out three grounds for judicial review of an Adjustment Board's decision: (1) failure of the Board to comply with the Railway Labor Act's requirements; (2) failure of the Board to conform or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption of a Board member.

Kinross v. Utah Railway, Co., 362 F.3d at 661-63.  Stallings argues both that there is jurisdiction under the aforementioned Railway Labor Act provisions, and also that there is jurisdiction for the Court to evaluate the PL Board's decision under the auspices of Stallings' due-process rights that the Constitution of the United States of America affords.  Taking the allegations in the Complaint as true, the Court concludes that it lacks subject-matter jurisdiction over either of Stallings' claims and thus grants BNSF's rule 12(b)(1) Motion to Dismiss.

I.      **STALLINGS' CLAIM DOES NOT FALL WITHIN ANY OF THE THREE NARROW GROUNDS THAT FEDERAL COURTS HAVE JURISDICTION TO REVIEW PURSUANT TO THE RAILWAY LABOR ACT.**

Stallings concedes that he is not making an argument that the PL Board stepped outside of its jurisdiction or was in some other way corrupted.  See  Response at 1-2.  He thus argues only that the Court has jurisdiction to review the PL Board's decision because the PL Board, by relying on the evidence it had considered persuasive when issuing its order, failed to comply with the Railway Labor Act's requirements given that it was not possible that the decision could have been based upon sufficient evidence.  See Response at 1-2.

This argument is an attempt to make a claim under the first prong of jurisdiction.  See 45 U.S.C. § 153(q).  The Tenth Circuit has already foreclosed Stallings' attempt to fit his claim within the first prong of federal court jurisdiction under the Railway Labor Act.  See Kinross v. Utah Ry. Co., 362 F.3d at 662 n.3.  Kinross v. Utah Railway, Co. held that a "district court improperly operated outside the bounds of these three grounds for judicial review by evaluating the scope of the evidence presented."  362 F.3d at 662 n.3.  It is thus not within the province of the Court's jurisdiction to entertain Stallings' request to vacate the PL Board's order, because, as Stallings has framed the contention, such review involves considering the weight of the evidence in support of the PL Board's order.  See Kinross v. Utah Ry. Co., 362 F.3d at 662 n.3.  The Court thus turns to Stallings' alternative argument requesting that the Court review the PL Board's decision in light of the due process it did not afford him.

II.     **THE TENTH CIRCUIT DOES NOT AUTHORIZE DUE-PROCESS REVIEW OF THE PL BOARD'S DECISION**.

Because the Court concludes that it lacks jurisdiction to review this matter under 45 U.S.C. § 153(q), Stallings requests that the Court still consider his case, because the PL Board's conduct "effectively denie[d] the right to be heard in a meaningful manner guaranteed by the

Constitution."   Response at 2.   There is a Court of Appeals split as to the federal courts' jurisdiction over claims alleging that the Railway Labor Act's adjustment procedures violate an employee's due-process rights.   The Tenth Circuit does not, however, allow such review.   See Kinross v. Utah Ry. Co., 362 F.3d at 662 n.3 (holding that "Congress specifically limited due process review of Adjustment Board proceedings to the three specific claims articulated in the statute").   See also United Steelworkers of Am. Local 1913 v. Union Pacific R.R., 648 F.2d 905, 910-11 (3d Cir. 1981)(same); Jones v. Seaboard System R.R., 783 F.2d 639, 642-44 (6th Cir. 1986)(same); Henry v. Delta Air Lines, 759 F.2d 870, 873 (11th Cir. 1985)(same).   Cf. Sullivan v. Malin, 2008 WL 1883283, at *3 (W.D.N.C., April 24, 2008)(Reidinger, J.)("This Court does not have subject matter jurisdiction to review the decision of the Board on any grounds other than the three enumerated by statute."); Clifton v. N.J. Transit Corp., 2005 WL 2320047, at *7 (D.N.J., September 22, 2005)(Pisano, J)("In this Circuit, a reviewing court may not entertain a challenge to an Adjustment Board decision based upon due process.").   Accordingly, the Court declines to exercise jurisdiction absent a claim alleging one of the three grounds that Congress expressly authorized in 45 U.S.C. § 153(q).

The Court thus does not have subject-matter jurisdiction to review such claims under the Railway Labor Act, 45 U.S.C. § 153(q).   The Tenth Circuit provides:

> The Railway Labor Act sets out three grounds for judicial review of an Adjustment Board's decision: (1) failure of the Board to comply with the Railway Labor Act's requirements; (2) failure of the Board to conform or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption of a Board member.

Kinross v. Utah Ry., Co., 362 F.3d at 661-63.   Stallings argues that the PL Board improperly weighed the evidence -- essentially, the argument is that, by excluding certain evidence, the PL Board's order is not based on sufficient evidence.   The Railway Labor Act does not authorize

- 20 -

sufficiency of the evidence review in federal court.  Absent a qualifying claim for review, the Court thus grants the Defendant's Motion to Dismiss.

**IT IS ORDERED** that the Defendant BNSF Railway Company's Fed. R. Civ. P. 12(B)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Memorandum Brief in Support Thereof, filed January 7, 2016 (Doc. 13), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*

Joel M. Young
Bernalillo, New Mexico

-- and --

Thomas Mucci
Mucci Law Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Andrea Lena Hyatt
David M. Pryor
BNSF Railway
Fort Worth, Texas

-- and --

Justin D. Rodriguez
Atkinson, Baker & Rodriguez, P.C.
Albuquerque, New Mexico

     *Attorneys for the Defendant*